**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

BB BUGGIES, INC.                                                                                    **PLAINTIFF**

v.                                           **Case No. 1:12-cv-00057 KGB**

BAD BOY, INC.                                                                                    **DEFENDANT**

## ORDER

      Plaintiff BB Buggies, Inc. ("BB Buggies") filed suit against Bad Boy, Inc. ("Bad Boy" or

"BBI") regarding the interpretation of a Settlement Agreement (the "Agreement") that ended

previous litigation between Bad Boy and the predecessor of BB Buggies.  Discovery disputes led

BB Buggies to file a motion for protective order (Dkt. No 25), second motion for protective

order (Dkt. No. 27), and motion to compel (Dkt. No. 33).  For the reasons explained below, the

Court grants in part and denies in part BB Buggies's motion to compel, grants its motion for

protective order, and denies its second motion for protective order.  Bad Boy is to take action

consistent with this Order within 21 days from the date of the Order.  The parties are directed to

file a joint status report with the Court regarding discovery within 30 days from the date of this

Order.

      **I.**      **Motion To Compel**

      Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as follows:

      Parties may obtain discovery regarding any nonprivileged matter that is relevant
      to any party's claim or defense—including the existence, description, nature,
      custody, condition, and location of any documents or other tangible things and the
      identity and location of persons who know of any discoverable matter.  For good
      cause, the court may order discovery of any matter relevant to the subject matter
      involved in the action.  Relevant information need not be admissible at the trial if
      the discovery appears reasonably calculated to lead to the discovery of admissible
      evidence.

BB Buggies alleges that Bad Boy's responses to BB Buggies's requests for admission, interrogatories, and requests for production are inadequate.  BB Buggies moves this Court to compel Bad Boy to respond properly to BB Buggies's discovery requests.  Alternatively, BB Buggies asks the Court to deem its requests for admissions admitted due to Bad Boy's alleged failure to respond or explain its denials in accordance with Federal Rule of Civil Procedure 36.

As an initial matter, Bad Boy contends that many of the alleged inadequacies are due to BB Buggies's "misimpression" that, under the Agreement, "Bad Boy is responsible for third party activities outside of its power and control" (Dkt. No. 39, at 1-2).  Bad Boy argues that it "is not responsible for third parties" and cannot "police these entities with respect to the usage of the trademark," as "Bad Boy does not own a federal trademark registration for BAD BOY for use with ATVs . . . ." (*Id.*).  Bad Boy states that this is why it could not provide the requested "production and information related to third party materials outside of Bad Boy's information, power and control" (*Id.*).

BB Buggies responds that Bad Boy does have control over third-party usage of the BAD BOY mark for ATVs and, under the Agreement, "has some level of accountability with respect to the use of the Bad Boy trademark for ATVs by its own dealers" (Dkt. No. 46, at 2).  In fact, BB Buggies contends that many of its discovery requests are aimed at determining Bad Boy's relationship with and extent of control over trademark usage by its dealers.  BB Buggies also points to paragraph 5.1 of the Agreement—which contains a limitation on the use of the "BBI MTV Mark," as defined under the Agreement, for "BBI, its dealers, distributors, retailers wholesalers and Affiliates"—and paragraph 5.3 of the Agreement (*Id.* at 1).  The Court notes the Agreement was a confidential settlement.  BB Buggies further argues that, notwithstanding the Agreement, "there may be provisions concerning use of the Bad Boy mark on ATVs by dealers

based upon whatever agreements exist between BBI and its dealers," which BB Buggies claims

Bad Boy has refused to provide (*Id.* at 2).

The Court will take under advisement these arguments regarding third party control in

reviewing the specific deficiencies alleged by BB Buggies.

### A.     Requests For Admission

Federal Rule of Civil Procedure 36(a)(4) provides that:

> If a matter is not admitted, the answer must specifically deny it or state in detail
> why the answering party cannot truthfully admit or deny it.  A denial must fairly
> respond to the substance of the matter; and when good faith requires that a party
> qualify an answer or deny only a part of a matter, the answer must specify the part
> admitted and qualify or deny the rest.  The answering party may assert lack of
> knowledge or information as a reason for failing to admit or deny only if the party
> states that it has made reasonable inquiry and that the information it knows or can
> readily obtain is insufficient to enable it to admit or deny.

If the Court finds "that an answer does not comply with this rule, the court may order either that

the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).

Of the 142 requests for admissions, BB Buggies contends that Bad Boy admitted none.

Instead, Bad Boy allegedly "made inappropriate objections and, on almost all of the responses,

refused to give any explanations as to why the requests were being denied," and "made no effort

to make specific denials or explain in detail why it could not admit or deny the requests," as

required by Rule 36(a)(4) (Dkt. No. 34, at 1-2).  BB Buggies in its motion sets forth specific

examples of certain purportedly deficient responses but states that "BBI's answers to these

requests contain many, many other deficient responses too numerous to explain in detail" (*Id.* at

4).   According to BB Buggies, Bad Boy's responses violated Rule 36(a)(4) and, thus, are

appropriate for relief under Rule 36(a)(6).

Bad Boy responds that it made a good faith effort to answer the admissions and provides

several explanations for its responses.  Further, Bad Boy claims it attempted in good faith to

explain its responses to BB Buggies in a letter before this motion was filed (*See* Dkt. No. 39-2). The Court will consider each of Bad Boy's explanations to determine if its responses based on that explanation were made in good faith.

First, Bad Boy explains that it cannot answer 23 separate requests for admission that named third parties are Bad Boy dealers without reference to the "actual author of the materials" and without a definition for the terms "dealer" and "BBI products" (*See* Dkt. No. 33-46 (Requests for Admission Nos. 18, 32, 37, 40, 49, 67, 68, 69, 73, 76, 79, 82, 85, 89, 92, 96, 99, 103, 107, 110, 114, 118, 121)). The Court finds this explanation unconvincing. To begin, the 23 requests for admission in question do not reference any materials (though related materials may be referenced in subsequent requests) (*See, e.g.*, Dkt. No. 39-1, at 10 (Requests for Admission Nos. 67-68)), so Bad Boy's request for the "actual author of the materials" is not well taken or relevant. The Court also finds unconvincing that Bad Boy has a good faith issue with the requests for admission not defining the term "dealers," as the term is used throughout the Agreement and Bad Boy's website despite not being defined. Regardless, BB Buggies subsequently provided Bad Boy with a definition of "dealer": "use the definition that [Bad Boy] uses for all of its references to 'dealers' on its website, and . . . use [Bad Boy's] understanding of the meaning of 'distributors' based on the Settlement Agreement" (Dkt. No. 33-52, at 3). Likewise, "BBI products" appears to have a generally accepted meaning as anything manufactured by Bad Boy. For these reasons, Bad Boy is ordered to amend or supplement its responses to the requests for admission based on these definitions of "dealers," "distributors," and "BBI products."

Second, Bad Boy explains that it cannot answer 21 separate requests for admission that an internet advertisement, apparently by a third party, is for a product manufactured by Bad Boy

without an opportunity to examine the product or question the supposed author to verify the advertisement's authenticity.  *See* Dkt. No. 33-46 (Requests for Admission Nos. 19, 33, 41, 50, 66, 70, 74, 77, 80, 83, 86, 90, 93, 97, 100, 105, 108, 111, 115, 119, 122); *see also id.* (Requests for Admission Nos. 9, 12)).   In its responses, Bad Boy stated that it had "made a reasonable inquiry and that the information it obtained is insufficient to enable it to admit or deny" (*See, e.g.*, Dkt. No. 33-46, at 25 (Request for Admission No. 70)).  *See* Fed. R. Civ. P. 36(a)(4).  BB Buggies argues that Bad Boy could go to the website and view each print-out to determine if Bad Boy manufactured the product shown.  The Court finds that Bad Boy's responses regarding these requests for admission were made in good faith, as the authenticity of a photograph or advertisement may be unverifiable even after reasonable inquiry.  *See id.*  Further, these matters may be explored through additional written discovery requests or deposition.

Third, Bad Boy explains that it cannot answer 19 separate requests for admission that a photographed vehicle advertised by a third party was manufactured by Bad Boy on or before February 16, 2010, without the ability to examine the product and its serial number, to question the owner, or to take any other necessary steps to determine its manufacture date.  *See* Dkt. No. 33-46 (Requests for Admission Nos. 20, 36, 44, 52, 75, 78, 81, 84, 88, 91, 94, 98, 101, 106, 109, 112, 116, 120, 123); *see also id.* (Requests for Admission Nos. 10-13)).  BB Buggies admits that "it might be the case that BBI cannot tell the model number for some reason or cannot ascertain the exact date of manufacture," but argues that "BBI should have so stated" (Dkt. No. 46, at 3-4).  Instead, BB Buggies stated that it had "made a reasonable inquiry and the information it obtained is insufficient to enable it to admit or deny" (*See, e.g.*, Dkt. No. 33-46, at 29 (Request for Admission No. 84)).   The Court finds that Bad Boy's responses regarding these requests for admission are sufficient under Rule 36(a)(4) and, thus, were made in good faith.  *See* Fed. R.

Civ. P. 36(a)(4) ("The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."). These matters also may be explored through additional written discovery requests or deposition.

Fourth, Bad Boy explains that BB Buggies included an overly broad definition of "BBI" that made Bad Boy "unable to answer a good many of [BB Buggies's] requests for admissions affirmatively" because it includes parties outside of Bad Boy's control (Dkt. No. 39, at 5).  The requests for admission define "BBI" as "Bad Boy, Inc. or any attorneys, agents, employees, representatives, investigators or other persons acting or purporting to act on behalf of BBI or BBI's attorneys" (Dkt. No. 33-5, at 1).  However, the definition's conjunction is "or," not "and." Accordingly, Bad Boy should have responded to each request for admission that it asserts was vague with two answers, one with respect to itself and one with respect to third parties arguably within this definition but allegedly outside of Bad Boy's control.  For example, one request for admission asked Bad Boy to admit "BBI entered into a Settlement Agreement with Bad Boy Enterprises, Inc." (Dkt. No. 33-46, at 2 (Request for Admission No. 1); *see also id.* (Requests for Admission Nos. 2, 6, 8, 11)).  This Court directs that Bad Boy should respond on behalf of Bad Boy and then, if appropriate, admit or deny the request with respect to third parties within the definition.  *See* Fed. R. Civ. P. 36(a)(4) ("A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.").  Bad Boy's arguments regarding third party control do not change what the Rule requires; Bad Boy must follow the Rule.  Accordingly, Bad Boy is ordered to supplement its responses to the requests for admission based on this explanation of the definition of "BBI."

Consistent with this Court's Order, and consistent with the requirements of Rule 36 of the Federal Rules of Civil Procedure, this Court directs Bad Boy to amend or supplement its responses to BB Buggies's requests for admission within 21 days from the date of this Order.

### B.    Interrogatories And Requests For Production

BB Buggies argues that Bad Boy's responses to its 15 interrogatories disclosed no facts and made several improper objections.  BB Buggies claims that Bad Boy indicated that some information was privileged, but provided no privilege log, and that it would supplement some responses after conducting discovery, but has not done so.  BB Buggies also argues that Bad Boy produced no new documents in response to its 15 requests for production but instead referred to documents disclosed with its initial disclosures.  BB Buggies provides letters between the parties' counsels discussing these alleged deficiencies and asks this Court to order Bad Boy to respond appropriately to BB Buggies's interrogatories and requests for production.  The Court will consider the adequacy of Bad Boy's responses.

First, for many interrogatories and requests for production, Bad Boy responded that the requests sought documents subject to the attorney-client privilege and work product doctrine (*See, e.g.*, Dkt. No. 33-47 (Requests for Production Nos. 1-4, 8-14)).  BB Buggies argues that it cannot evaluate the reasonableness of these objections because Bad Boy has not produced a "privilege log."  Federal Rule of Civil Procedure 26(b)(5)(A) provides in pertinent part that:

> [w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

To the extent Bad Boy persists in withholding documents based on a claim of privilege, Bad Boy is ordered to produce a privilege log that complies with Rule 26(b)(5)(A) within 21 days of the date of this Order.

Moreover, in regard to its objections based on privilege, Bad Boy's counsel also explained in a letter to BB Buggies's counsel that "any documents which may be potentially used as exhibits are currently attorney-work product, and therefore not discoverable. However, as discovery progresses and trial nears, Bad Boy has indicated that it will supplement this response at a later date" (Dkt. No. 33-51, 1-2). BB Buggies's counsel responds that "if you have any *pre-existing* documents that you intend to use at the trial, they should either be disclosed now or they should not be allowed in" (Dkt. No. 33-52, at 1 (emphasis added)). Rule 26(b)(3)(A) covers trial preparation materials:  "[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Based on Rule 26(b)(3)(A), the Court agrees with BB Buggies that pre-existing documents Bad Boy intends to use at the trial but that were not prepared in anticipation of litigation or for trial must be disclosed now.  If Bad Boy is withholding these types of documents until a protective order is agreed to by the parties and entered by the Court, Bad Boy must so state in an amended or supplemental response and propose an acceptable protective order within 21 days of the date of this Order.  Insofar as documents are privileged as trial preparation materials, they must be included on the privilege log as ordered above.

Second, in a letter to BB Buggies's counsel dated April 9, 2013, responding to alleged deficiencies, Bad Boy's counsel stated that Bad Boy would amend or supplement various responses to BB Buggies's interrogatories and requests for production (*See* Dkt. No. 33-51 (Interrogatory Nos. 2, 7-11; Requests for Production Nos. 6-7, 9-12, 15)).  On October 17, 2013,

BB Buggies's reply indicated that it has received no amendment or supplement (Dkt. No. 46, at 5).  To the extent that Bad Boy still has not amended or supplemented these responses, Bad Boy must amend or supplement its responses or explain why it cannot within 21 days of the date of this Order.  The Court notes that because it is not convinced by Bad Boy's assertion of privilege, or its overly broad or relevancy arguments, as to Interrogatory No. 10 and Requests for Production Nos. 6 and 7, Bad Boy has not adequately answered Interrogatory No. 10 or Requests for Production Nos. 6 and 7 without amendment or supplement.

Third, Bad Boy argues that it cannot respond to several interrogatories and requests for production because BB Buggies again did not include definitions for the terms "dealer" and "distributor" (*See* Dkt. No. 34-51 (Interrogatory Nos. 6, 14, Requests for Production Nos. 3-5)). Bad Boy is ordered to supplement its responses to the interrogatories and requests for production based on the definitions of "dealers" and "distributors" above.

Fourth, Bad Boy similarly argues that it cannot answer Interrogatory No. 15 because it had no definition for the word "production" (Dkt. No. 33-51, at 3).  In a letter to Bad Boy's counsel, BB Buggies defined "production":  "[T]he date that the vehicles . . . rolled off the assembly line" (Dkt. No. 33-52, at 4).  Bad Boy is ordered to supplement its response to Interrogatory 15 based upon this definition.

Consistent with this Court's Order, within 21 days from the date of this Order, Bad Boy must: (1) produce a privilege log in accord with Rule 26 of the Federal Rules of Civil Procedure; (2) amend or supplement responses for which it indicated amendment or supplements would be forthcoming; (3) supplement its responses based on the above definitions of "dealers" and "distributors"; and (4) supplement its response to Interrogatory No. 15 based upon the above definition of "production."  To the extent that Bad Boy is withholding information or documents

until a protective order is agreed to by the parties and entered by the Court, Bad Boy must amend or supplement its responses to state it is withholding information or documents subject to the entry of an acceptable protective order and propose an acceptable protective order, if necessary, within 21 days from the date of this Order.

**II.      Motion For Protective Order**

On April 26, 2013, BB Buggies filed a motion for protective order (Dkt. No. 25).  In this motion, BB Buggies requests that the Court issue a protective order with respect to the Federal Rule of Civil Procedure 30(b)(6) notice of deposition issued on April 18, 2013, to preclude the deposition of BB Buggies's corporate representative until such time as Bad Boy properly complies with BB Buggies's prior discovery requests.  The parties agreed to remove the noticed deposition from the calendar pending resolution of BB Buggies's motions for protective order (Dkt. No. 32).

BB Buggies argues that it would be disadvantaged and irreparably harmed if required to go forward with the deposition without the benefit of meaningful discovery.  To obtain meaningful discovery, BB Buggies filed the motion to compel that is discussed above.  For good cause shown, the Court grants BB Buggies's motion for protective order.  Bad Boy shall not take the Rule 30(b)(6) deposition of BB Buggies's corporate representative until Bad Boy has complied properly with this Court's orders regarding BB Buggies's motion to compel.  Within 30 days from the date of this Order, the parties are directed to file with this Court a status report specifically addressing the then-current status of discovery.  At that time, the Court will assess whether the Rule 30(b)(6) deposition of BB Buggies's corporate representative may proceed.

### III.      Second Motion For Protective Order

On May 2, 2013, BB Buggies filed a second motion for protective order (Dkt. No. 27). Again regarding the Rule 30(b)(6) notice of deposition issued on April 18, 2013, BB Buggies requests that the Court issue a protective order precluding the deposition until Bad Boy removes Item 3 from its notice.   Item 3 provides that the deponent should be "the person(s) most knowledgeable within its organization with respect to . . . [a]ll facts and documents related to [BB Buggies's] advertising and/or promotional expenditures, or expected advertising and/or promotional expenditures, for any goods offered for sale, sold and/or distributed by [BB Buggies] or [BB Buggies's] licensees" (Dkt. No. 27-1, at 3).   Bad Boy argues that Item 3 is overbroad and requests business information that is highly confidential, not relevant to this lawsuit, and thus not discoverable.

Bad Boy makes two main arguments in response.   First, Bad Boy argues that any disclosure of highly confidential and proprietary information will not adversely affect BB Buggies because of the Agreed Protective Order (Dkt. No. 16).   The Court agrees, and BB Buggies does not argue otherwise.   Second, Bad Boy argues that the information requested by Item 3 is relevant because BB Buggies has asserted a claim for damages.   Again, Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .   Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   According to Bad Boy, the value of a trademark, which must be known to assess damages to a trademark, is inherently tied to the expense of advertising and promoting the trademark, meaning the information requested by Item 3 is "reasonably calculated to lead to the discovery of admissible evidence."

BB Buggies replies that the information requested by Bad Boy is irrelevant, despite its claim for damages, because a breach of the Agreement in and of itself constitutes presumed damages. BB Buggies cites two cases for this assertion. *See Baker v. Armstrong*, 611 S.W.2d 743, 745 (Ark. 1981); *Fritz v. Baptist Mem. Health Care Corp.*, 211 S.W.3d 593, 595-96 (Ark. Ct. App. 2005). However, both *Baker* and *Fritz* make clear that, even when such a presumption is appropriate, only nominal damages are presumed to flow from an infringement of a legal right alone. *Id.*

Accordingly, unless BB Buggies limits this action to seeking only nominal damages, the expense of advertising and promoting the trademark is relevant. Because it is unclear whether BB Buggies intended to seek more than nominal damages, BB Buggies's second motion for protective order is denied. BB Buggies may move to dismiss voluntarily all damages claims except those for nominal damages to avoid answering questions regarding Item 3, as doing so would make the information requested by Item 3 irrelevant.

\* \* \*

In sum, the Court grants in part and denies in part BB Buggies's motion to compel (Dkt. No. 33). Regarding BB Buggies's requests for admission, Bad Boy is ordered to supplement its responses based on the above definitions of "dealers," "distributors," and "BBI products," and the above explanation of the definition of "BBI." Regarding BB Buggies's interrogatories and requests for production, Bad Boy is ordered to: (1) produce a privilege log; (2) amend or supplement responses for which it indicated amendment or supplements would be forthcoming; (3) supplement its responses based on the above definitions of "dealers" and "distributors"; and (4) supplement its response to Interrogatory No. 15 based upon the above definition of "production." To the extent that Bad Boy is withholding information or documents until a

protective order is agreed to by the parties and entered by the Court, Bad Boy also must amend or supplement its responses to state it is withholding information or documents subject to the entry of an acceptable protective order and propose an acceptable protective order, if necessary. Bad Boy is to take action consistent with this Order within 21 days from the date of the Order. The parties are directed to file a joint status report with the Court regarding discovery within 30 days from the date of this Order.

The Court grants BB Buggies's motion for protective order (Dkt. No. 25).  Bad Boy shall not take the Rule 30(b)(6) deposition of BB Buggies's corporate representative until Bad Boy has complied properly with this Court's orders regarding BB Buggies's motion to compel.

The Court denies BB Buggies's second motion for protective order (Dkt. No. 27), though BB Buggies may move to dismiss voluntarily all damages claims except those for nominal damages to avoid answering questions regarding Item 3.

SO ORDERED this 10th day of March, 2014.


_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE